IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Tanya Lynn Cetina, ) | Case No. 6:12-cv-02222-TMC-JDA |
| ) | |
| Plaintiff, ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| v. ) | |
| ) | |
| Michelin North America; Newbold Services; ) | |
| Clint Morgan; Dave Murphy; Dave Brown; ) | |
| Dave Mauger, ) | |
| ) | |
| Defendants. ) | |

This matter is before the Court on a motion to dismiss filed by Defendant Michelin North America ("Michelin") [Doc. 74] and a motion to dismiss filed by Defendant Dave Mauger ("Mauger") [Doc. 89].[1] Plaintiff alleges race, sex, and religious discrimination, sexual harassment, and retaliation claims pursuant to Title VII of the Civil Rights Act of 1964, as amended ("Title VII"); age discrimination and retaliation claims pursuant to the Age Discrimination in Employment Act, as amended ("ADEA"); disability discrimination and retaliation claims pursuant to the Americans with Disabilities Act of 1990, as amended ("ADA"); and state law tort claims. [Docs. 1, 1-1, 1-2.] Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and Local Civil Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in cases alleging employment discrimination claims are referred to a United States Magistrate Judge for consideration.

Plaintiff filed her Complaint on August 6, 2012. [Doc. 1.] On December 10, 2012, Michelin filed a motion to dismiss. [Doc. 74.] Plaintiff filed a response in opposition to

---

[1]Also pending before the Court is a motion to dismiss Defendant Dave Brown for insufficient service of process [Doc. 187], which is not addressed in this Report and Recommendation.

Michelin's motion on December 18, 2012 and additional attachments to her response on December 28, 2012 and January 30, 2013. [Docs. 80, 93, 118.] On December 26, 2012, Mauger filed a motion to dismiss. [Doc. 89.] Plaintiff filed a response in opposition to Mauger's motion on January 3, 2013 [Doc. 97], and Mauger filed a reply on January 14, 2013 [Doc. 108]. Plaintiff filed a sur-reply on January 17, 2013. [Doc. 116.] The motions are now ripe for review.

## **BACKGROUND**[2]

On July 12, 2010, Plaintiff began work as a janitor with Defendant Newbold Services ("Newbold"). [Doc. 1 at 5.] She reported to Michelin's Sandy Springs plant for job orientation. [*Id.*] During orientation, she "was subjected To Sexual Har[]assment, Sexual Ass[a]ult, Ass[a]ult & Battery, Har[]assment, aggravated Ass[a]ult with various mens tools." [*Id.*] Then Plaintiff was injured on the job and "coverups ensued." [*Id.* at 5–6.] Plaintiff contacted the Equal Employment Opportunity Commission ("EEOC") on December 27, 2010 and filed charges of discrimination against Newbold and Michelin. [*Id.* at 6; Doc. 1-2 at 12–13 (charges).] Plaintiff was fired on March 25, 2011, and she then filed charges of retaliation. [Doc. 1 at 6; Doc. 1-2 at 19, 22.] After she was fired and filed retaliation charges, Plaintiff "receiv[ed] threats and fights" at home, the South Carolina Department of Social Services took her daughter, and Plaintiff's parental rights were terminated. [Doc.

---

[2] For purposes of the motions to dismiss, the Court must accept as true Plaintiff's well-pleaded allegations and may rely on the Complaint and documents attached to the Complaint as exhibits or incorporated by reference. See *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *Simons v. Montgomery Cnty. Police Officers*, 762 F.2d 30, 31 (4th Cir. 1985). Thus, the following Background is a summary of the allegations contained in the Complaint, Docket Entry Number 1, with reference to documents attached to the Complaint, Docket Entry Number 1-2.

1 at 6.] Plaintiff seeks $350 million for her pain, suffering, humiliation, and degradation; the violation of her rights; and the destruction of her family, reputation, and health.[3] [*Id.* at 8.]

## APPLICABLE LAW

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe her pleadings. *Estelle*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, a pro se complaint is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means that only if the court can reasonably read the pleadings to state a valid claim on which the complainant could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the complainant's legal arguments for her. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

---

[3] Plaintiff also seeks her daughter's safe return. [Doc. 1 at 6.] However, this Court lacks the power to effect that remedy. *See, e.g., Yow v. Crater*, 526 F. Supp. 240, 246 (M.D.N.C. 1981) ("[T]he carefully enunciated and oft-repeated policy of the federal judiciary is to refuse jurisdiction of family and domestic disputes, since this area of the law belongs to the state courts."); *see also Lehman v. Lycoming Cnty. Children's Servs. Agency*, 458 U.S. 502, 512 (1982) (holding 28 U.S.C. § 2254, the federal habeas corpus statute, does not confer federal jurisdiction over child custody cases and stating that "federal courts consistently have shown special solicitude for state interests in the field of family" (internal quotation marks omitted) (quoting *United States v. Yazell*, 382 U.S. 341, 352 (1966))).

**Motion to Dismiss Standard**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support her claim and entitle her to relief. When considering a motion to dismiss, the court should "accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). However, the court "need not accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). Further, for purposes of a Rule 12(b)(6) motion, a court may rely on only the complaint's allegations and those documents attached as exhibits or incorporated by reference. *See Simons v. Montgomery Cnty. Police Officers*, 762 F.2d 30, 31 (4th Cir. 1985). If matters outside the pleadings are presented to and not excluded by the court, the motion is treated as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(d).

With respect to well-pleaded allegations, the United States Supreme Court explained the interplay between Rule 8(a) and Rule 12(b)(6) in *Bell Atlantic Corp. v. Twombly*:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief

> above the speculative level on the assumption that all the
> allegations in the complaint are true (even if doubtful in fact).

550 U.S. 544, 555 (2007) (footnote and citations omitted); *see also* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216, at 235–36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than a bare averment that the pleader wants compensation and is entitled to it or a statement of facts that merely creates a suspicion that the pleader might have a legally cognizable right of action.").

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard reflects the threshold requirement of Rule 8(a)(2)—the pleader must plead sufficient facts to show he is entitled to relief, not merely facts consistent with the defendant's liability. *Twombly*, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" (quoting *Twombly*, 550 U.S. at 557)). Accordingly, the plausibility standard requires a plaintiff to articulate facts that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible the plaintiff is entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

## **DISCUSSION**

5

**Michelin's Motion to Dismiss**

Michelin contends Plaintiff's claims against it should be dismissed for two reasons: (1) some of Plaintiff's claims are time barred because she failed to bring suit within the 90-day limitations period following receipt of her January 23, 2012 Notice of Right to Sue, and (2) Plaintiff has failed to allege Michelin was her employer. [Doc. 74-1 at 1–7.] Michelin also contends that, "to the extent that Plaintiff's Complaint purports to allege any other cause of action against Michelin, such claim is not facially plausible because Plaintiff has failed to plead facts allowing the Court to draw the reasonable inference that Michelin is liable for the misconduct alleged." [*Id.* at 7.] In response, Plaintiff argues she was represented at some point during her proceedings before the EEOC, including when she received the right to sue letter, but her attorney "sat on it with Political Prejudice." [Doc. 80 at 4.] Plaintiff also argues Michelin should be held liable for the violent acts and torts Michelin's employees committed against Plaintiff on Michelin's property. [*Id.* at 2.]

### *Timeliness*

As to Michelin's argument that some of Plaintiff's claims are untimely, the Court agrees that certain of Plaintiff's claims appear to be time barred, but Plaintiff has also set forth allegations that could support equitable tolling of the limitations period. Federal law sets out the process by which an employee may institute an employment discrimination lawsuit against her employer:

> Before bringing a civil suit for an ADA[, ADEA, or Title VII] violation, the aggrieved party must file a charge with the EEOC. If the EEOC does not take action within 180 days from the date of filing, the aggrieved party is entitled to notice from the EEOC. Upon notification, i.e. a right to sue letter, the aggrieved party has 90 days to file suit.

6

*Davis v. Va. Commonwealth Univ.*, 180 F.3d 626, 628 n.3 (4th Cir. 1999) (citing 42 U.S.C. § 2000e-5(f)(1); *Dickey v. Greene*, 710 F.2d 1003, 1005 (4th Cir. 1983)); *Aziz v. Orbital Scis. Corp.*, 165 F.3d 17, 1998 WL 736469, at *1 (4th Cir. 1998) (per curiam) (unpublished table decision) ("Title VII and the ADEA allow an aggrieved party ninety days after receipt of a right-to-sue letter from the EEOC to file a civil action." (citing 42 U.S.C. § 2000e-5(f)(1); 29 U.S.C. § 626(e))).  However, the United States Supreme Court has "interpreted Title VII's requirement that suits be filed within 90 days of receiving a notice of right to sue from the Equal Employment Opportunity Commission to be subject to tolling in appropriate circumstances."  *Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 439 (1990) (citing *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345 (1983)).

> With respect to equitable tolling, the United States Supreme Court has recognized,
>
>> Federal courts have typically extended equitable relief only sparingly.  We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass.  We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights.

*Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990) (footnotes omitted) (citation omitted).  The United States Court of Appeals for the Fourth Circuit has underscored the very limited circumstances where equitable tolling will be permitted:

> [A]ny invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes. To apply equity generously would loose the rule of law to whims about the adequacy of excuses, divergent responses to claims of hardship, and subjective notions of fair accommodation. We believe, therefore, that any

7

> resort to equity must be reserved for those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result.

*Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000). In accord with these guidelines, the Fourth Circuit has upheld applications of equitable tolling of the 90-day filing period when the employee or her attorney was diligent in pursuing the employee's avenues of relief. *See, e.g.*, *Crabill v. Charlotte Mecklenburg Bd. of Educ.*, 423 F. App'x 314, 321–22 (4th Cir. 2011) (applying equitable tolling when the plaintiff demonstrated she was diligent in checking her mail and staying in contact with her attorney but somehow failed to receive her right to sue notice); *Coleman v. Talbot Cnty. Det. Ctr.*, 242 F. App'x 72, 74 (4th Cir. 2007) ("Although we do not excuse Coleman's failure to notify the EEOC of her change of address, it is not at all unreasonable for a layperson who has retained counsel to assume that all further matters will be handled by her attorney. We therefore conclude that . . . the primary fault is that of the EEOC for not—as both counsel and Coleman reasonably expected—sending a copy of the right-to-sue letter to counsel. In this vein, we note with approval counsel's diligence in pursuing the matter.").

Here, Plaintiff filed two charges of discrimination against Michelin with the EEOC—numbers 436-2011-00253 ("charge number 253") and 436-2011-00576 ("charge number 576"). [Doc. 1-2 at 12, 19–20.] She received a right to sue notice for charge number 253 on January 23, 2012 and for charge number 576 on June 19, 2012. [*Id.* at 30–32, 40–41.] Assuming, because Plaintiff's receipt date has not been alleged, that Plaintiff received the notices within three days of the mailing date, Plaintiff had 90 days from January 26, 2012—or until April 25, 2012—to file an action in this Court concerning charge

number 253 and 90 days from June 22, 2012—or until September 20, 2012—with respect to charge number 576.  *See Williams v. Enter. Leasing Co. of Norfolk/Richmond*, 911 F. Supp. 988, 991 (stating that, under what is now Federal Rule of Civil Procedure 6(d), if the date of receipt of the right to sue notice is unknown, the 90-day period begins to run three days after the mailing date (citing *Russell v. Am. Tobacco Co.*, 528 F.2d 357, 365 (4th Cir. 1975))).  Plaintiff filed this action on August 6, 2012, well after the filing period expired for charge number 253.  [Doc. 1.]  Thus, her allegations based on charge number 253 are time barred unless she has alleged facts that would support equitable tolling of the filing period.

As noted, Plaintiff argues she was represented when she received the right to sue notice for charge 253, but her attorney "sat on it with Political Prejudice."  [Doc. 80 at 4.]  While the record indicates Plaintiff received a copy of the right to sue notice [Doc. 1-2 at 30–31 (notice bearing Plaintiff's address)], the record also appears to indicate Plaintiff was represented at the time she received the notice [*see, e.g.*, *id.* at 18, 21, 26–27, 36–37 (correspondence dated June 2011, July 2011, August 2011, April 2012, and June 2012 evidencing Plaintiff was represented by an attorney)].  However, the record fails to indicate whether there was an agreement between Plaintiff and her attorney regarding the filing of any lawsuit based on the discrimination charge.  *See Coleman*, 242 F. App'x at 74 ("[I]t is not at all unreasonable for a layperson who has retained counsel to assume that all further matters will be handled by her attorney.").  Thus, the Court hesitates to dismiss Plaintiff's claim as time barred at this procedural posture, where Plaintiff's pleadings at least have set out an equitable tolling argument but the facts have not been fully developed.  In any event, the Court need not resolve whether Plaintiff's claims are time barred because, as explained below, the claims as to Michelin are otherwise subject to dismissal.

### *Sufficiency of Allegations as to Michelin*

Title VII[4] makes it unlawful for an employer "to discriminate against any individual with respect to . . . compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Title VII defines "employer" and "employee," *id.* § 2000e(b), (f), but "whether an employment relationship exists turns on 'traditional principles of agency law,'" *Bender v. Suburban Hosp., Inc.*, 159 F.3d 186, 189–90 (4th Cir. 1998) (quoting *Walters v. Metro. Educ. Enters., Inc.*, 519 U.S. 202, 211 (1997)). Thus, "[a] defendant may be held liable under Title VII if it (1) fits within the 'employer' definition of Title VII and (2) 'exercises substantial control over significant aspects of the compensation, terms, conditions, or privileges of plaintiff's employment.'" *Williams v. Grimes Aerospace Co.*, 988 F. Supp. 925, 934 (D.S.C. 1997) (quoting *Magnuson v. Peak Tech. Servs., Inc.*, 808 F. Supp. 500, 507 (E.D. Va. 1992)).

---

[4]Liberally construing the Complaint, Plaintiff has alleged violations of Title VII, the ADEA, and the ADA by Michelin. [*See, e.g.*, Doc. 1-2 at 10, 12–13, 15, 19, 22, 24–25, 30, 33.] Michelin argues Plaintiff has failed to allege Michelin was her employer for purposes of Title VII liability; Michelin has failed to argue its liability with respect to the ADEA or the ADA. [Doc. 74-1 at 6–7.] Under the ADEA, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Under the ADA, an employer may not "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. §§ 12111(2), 12112(a). These three statutory schemes—Title VII, the ADEA, and the ADA—define "employer" in essentially the same way. *See Reynolds v. Am. Nat'l Red Cross*, 701 F.3d 143, 155 (4th Cir. 2012) ("[C]ourts often look to Title VII—which defines 'employer' in essentially the same way as the ADA—for guidance on ADA issues."); *Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990, 993 (6th Cir. 1997) ("Because Title VII, the ADEA, and the ADA define employer essentially the same way, we rely on case law developed under all three statutes." (citation omitted) (internal quotation marks omitted)). *Compare* 42 U.S.C. § 2000e(b), *with* 29 U.S.C. § 630(b), *and* 42 U.S.C. § 12111(5). Thus, for claims under all three statutes, whether an employment relationship exists between an individual and a putative employer is determined by the same inquiry. Therefore, whether an employment relationship existed between Michelin and Plaintiff determines whether Michelin could possibly be liable for the alleged violations of Title VII, the ADEA, and the ADA.

To determine whether a defendant exercises the requisite control to be an individual's employer, relevant factors include the putative employer's degree of control over the individual's "work assignments, the means and manner of her performance, and the hours of her employment." *Amarnare v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 611 F. Supp. 344, 348 (S.D.N.Y. 1984). For further guidance, when analyzing whether an employer-employee relationship exists, courts within the Fourth Circuit utilize a hybrid test, also referred to as the *Spirides* test:

> The *Spirides* test, while emphasizing the control exhibited by the putative employer, considers eleven additional factors to determine if an individual is an employee: (1) the type of occupation; (2) the skill required for the occupation; (3) who furnished the equipment used at the place of work; (4) the length of time worked; (5) the method of payment; (6) how the relationship is terminated; (7) whether annual leave is available; (8) whether work is integral part of employer's business; (9) whether the employer provides retirement benefits; (10) whether the employer pays social security taxes; and (11) the intention of the parties.

*Williams*, 988 F. Supp. at 935 (citing *Garrett v. Phillips Mills, Inc.*, 721 F.2d 979, 982 (4th Cir. 1983)).

Here, Plaintiff has failed to allege sufficient facts to state a plausible claim based on an employment relationship between Plaintiff and Michelin. Plaintiff has explicitly alleged that she worked for Newbold, a contractor that provided janitorial and preventative maintenance services to Michelin. [*See, e.g.*, Doc. 1 at 5 ("I went to work as a janitor with Newbold Services."); Doc. 97 at 1–2 ("Mr. Mauger did in fact orient the entire group of Newbold Services contractor employee's."), 2 ("I worked for Newbold Services as a Janitor/Preventative Mainten[an]ce Crew."), 4 (describing an incident that occurred on "'PayDay' for us Newbold People").] Plaintiff has failed to make similar allegations as to

11

Michelin, with only the following allegations tending to support that an employment relationship existed between Plaintiff and Michelin: (1) Mauger, a Michelin employee, transferred Plaintiff [Doc. 1 at 2] and made decisions regarding Newbold employees [Doc. 97 at 2]; (2) Plaintiff reported to Michelin's Sandy Springs plant for job orientation [Doc. 1 at 5]; and (3) "they" fired Plaintiff on March 25, 2011 [*id.* at 6]. However, these allegations fail to support a reasonable inference that Michelin was Plaintiff's employer. *See Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). Therefore, even liberally construing Plaintiff's allegations and taking her allegations in the light most favorable to her, Plaintiff has failed to allege Michelin was her employer, and because any claims against Michelin appear to be based on Plaintiff's employment, Plaintiff has failed to state any claim for relief against Michelin.[5]

**Mauger's Motion to Dismiss**

Mauger contends Plaintiff has failed to state a plausible claim for relief against him. [Doc. 89-1 at 5.] Specifically, Mauger contends the sole allegation against him in the Complaint—that he transferred Plaintiff and refused to tell her lawyer the truth—is untrue and does not support any claim for relief. [*Id.*] Mauger also argues his employer, Michelin, was not Plaintiff's employer and Mauger was not Plaintiff's supervisor, but even if Michelin was Plaintiff's employer and Mauger was Plaintiff's supervisor, Mauger would not be liable

---

[5]As discussed, the Complaint may be reasonably construed as alleging Title VII, ADEA, and ADA claims against Michelin. To the extent Plaintiff has attempted to plead additional claims against Michelin, such claims also appear to be related to Plaintiff's employment—for example, Plaintiff alleges she was subjected to assault and battery at her workplace [*see* Doc. 1 at 5]—and thus, Michelin would be liable, if at all, only if an employment relationship existed between Michelin and Plaintiff.

in his individual capacity for a violation of Title VII. [*Id.* (citing *Lissau v. S. Food Serv., Inc.*, 159 F.3d 177 (4th Cir. 1998)).]

Plaintiff contends Mauger joined in, permitted, or encouraged the various torts and criminal acts she alleges were committed against her.[6]  [Doc. 97.]  With her sur-reply, Plaintiff submitted the following list of "clarified claims" against Mauger, quoted substantially verbatim:

> 1) Sexual Harrassement in the workplace
>
> 2) Violation's of Federal Code, Statute Title VII.  ADA. (Americans with Disabilities act, Civil Rights act.
>
> 3) Age Discrimination Act, in Employment as amended in 1967.
>
> 4) Retaliation for filing EEOC complaint Dec. 27 - 2010 (complaint originally filed) called in on recorded telephone line.
>
> Please refer to the 5 pages of EEOC's charges of Discrimination.

[Doc. 116-1.]

As stated, Title VII prohibits discriminatory acts by employers.  42 U.S.C. § 2000e-2(a)(1).  The statute defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day" for a given period of time and "any agent of such a person." *Id.* § 2000e(b).  However, individuals are not liable in their individual capacities for Title VII violations.  *Lissau v. S. Food Serv., Inc.*,

---

[6]In reply, Mauger contends Plaintiff's allegations are "incoherent, illogical and incomprehensible . . . [as well as] delusional and quite unbelievable." [Doc. 108 at 3.]

159 F.3d 177, 180 (4th Cir. 1998). Therefore, in his individual capacity, Mauger cannot be liable for any Title VII violation.[7]

## RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends Michelin's motion to dismiss [Doc. 74] and Mauger's motion to dismiss [Doc. 89] be GRANTED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

May 23, 2013
Greenville, South Carolina

---

[7] Additionally, as discussed, Plaintiff has failed to allege an employment relationship existed between her and Michelin; therefore, Plaintiff has failed to state a claim for relief under Title VII for acts of employment discrimination committed by Mauger, a Michelin employee.

Further, like Michelin, Mauger has addressed his liability with respect to only Title VII [Doc. 89-1 at 5], but Plaintiff's Complaint may be reasonably construed as alleging violations of Title VII, the ADEA, and the ADA [*see, e.g.*, Doc. 1-2 at 10, 12–13, 15, 19, 22, 24–25, 30, 33]. As stated, these three statutory schemes—Title VII, the ADEA, and the ADA—define "employer" in essentially the same way, and thus, courts use case law developed under one statutory scheme to analyze issues under another statutory scheme. *See Reynolds*, 701 F.3d at 155; *Swallows*, 128 F.3d at 993. Moreover, the Fourth Circuit has held individuals are not personally liable for violations of the ADEA or the ADA. *See, e.g.*, *Baird ex rel. Baird v. Rose*, 192 F.3d 462, 472 (4th Cir. 1999) ("Because Title VII does not authorize a remedy against individuals for violation of its provisions, and because Congress has made the remedies available in Title VII applicable to ADA actions, the ADA does not permit an action against individual defendants for retaliation for conduct protected by the ADA."); *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 510 (4th Cir. 1994) ("[W]e read § 630(b) [of the ADEA] as an unremarkable expression of respondeat superior—that discriminatory personnel actions taken by an employer's agent may create liability for the *employer*." (emphasis added)). Thus, as to Mauger, Plaintiff has failed to state a claim for relief under Title VII, the ADEA, or the ADA.

Finally, Plaintiff's "clarified claims" demonstrate she has alleged only employment law claims against Mauger; Plaintiff clearly sets out that she is alleging claims under Title VII, the ADEA, and the ADA. [Doc. 116-1.] To the extent Plaintiff attempted to allege sexual harassment as a state law claim [*see id.* (listing "Sexual Harrassement in the workplace" as a separate claim)], South Carolina does not recognize sexual harassment as a tort claim, *White v. Benedict College, Inc.*, 344 S.E.2d 147, 148 (S.C. 1986); *see also Frazier v. Badger*, 603 S.E.2d 587, 592 (S.C. 2004) (recognizing plaintiffs have a right created by statute, rather than the common law of torts, to file a civil rights complaint for sexual harassment). Therefore, as to Mauger, Plaintiff has failed to state a claim on which relief may be granted.