IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Tanya Lynn Cetina, ) | Case No. 6:12-cv-02222-TMC-JDA |
| ) | |
| Plaintiff, ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| v. ) | |
| ) | |
| Newbold Services, Clint Morgan, ) | |
| Dave Murphy and Dave Brown, ) | |
| ) | |
| ) | |
| Defendants. ) | |

This matter is before the Court on a motion to dismiss for insufficient service of process filed by David T. Brown[1] [Doc. 187] and a motion for summary judgment filed by Defendants Clint Morgan, Dave Murphy, and Newbold Services (collectively, "Newbold Defendants") [Doc. 215]. In her Complaint, Plaintiff alleges race, sex, and religious discrimination, sexual harassment, and retaliation claims pursuant to Title VII of the Civil Rights Act of 1964, as amended ("Title VII"); age discrimination and retaliation claims pursuant to the Age Discrimination in Employment Act, as amended ("ADEA"); disability discrimination and retaliation claims pursuant to the Americans with Disabilities Act of 1990, as amended ("ADA"); and state law tort claims. [Docs. 1, 1-1, 1-2.] Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and Local Civil Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in cases alleging employment discrimination claims are referred to a United States Magistrate Judge for consideration.

Plaintiff filed her Complaint on August 6, 2012 against Defendants Michelin North American ("Michelin"), Newbold Services ("Newbold"), Clint Morgan ("Morgan"), Dave Murphy ("Murphy"), Dave Brown, Dave Mauger ("Mauger") and Sandra Chavez ("Chavez").

---

[1] As explained more fully below, David T. Brown is not the proper defendant in this case.

[Doc. 1.] Chavez was dismissed from the case on November 7, 2012. [Doc. 35.] Michelin and Mauger were dismissed from this action on June 11, 2013. [Doc. 194.] David T. Brown filed his motion to dismiss on May 14, 2013. [Doc. 187.] On May 15, 2013, the Court issued an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975),advising Plaintiff of the summary judgment/dismissal procedure and of the possible consequences if he failed to adequately respond to the motion. [Doc. 188.] Plaintiff filed a response in support of Brown's motion on June 13, 2013. [Doc. 199.]  Defendants filed their motion for summary judgment on July 9, 2013 [Doc. 215], the Court issued a *Roseboro* Order on July 10, 2013 [Doc. 221], Plaintiff responded on August 6, 2013 [Doc. 227], and Defendants replied on August 15, 2013 [Doc. 229].  The motions are now ripe for review.

## BACKGROUND[2]

Plaintiff began working as a janitor for Newbold on July 12, 2010. [Doc. 236 at 18:18 (Dep. Of Tanya Cetina)]. Newbold had a contract to provide janitorial services to Michelin. [*See* Doc. 215-2.] Initially, Plaintiff worked at the Sandy Springs Michelin North America plant. [Doc. 236 at 19:14.] There, she reported to Defendant Clint Morgan. *Id.* at 19:20. Plaintiff then moved to Michelin's Starr plant and was supervised by Michelle Mauger.[3] [*Id.* at 20:1–3.] Plaintiff was an at-will employee and signed a disclaimer averring that she was aware of this status. [Doc. 215-5.] Plaintiff was terminated on March 25, 2011. [Doc. 236 at 20:12–14.]

---

[2] The Court has included a discussion of the basic facts and the particular facts pertinent to Plaintiff's retaliation claim. As explained in the Discussion section, *infra*, Plaintiff's other discrimination claims are time barred.

[3] Ms. Mauger is not a defendant in this case.

2

Over the course of her employment, Plaintiff alleges that she was assaulted numerous times by various Newbold employees. [*E.g., id.* at 31:1–32:25 (accusing Morgan of driving Plaintiff to an offsite location so his girlfriend could attack Plaintiff); *id.* at 42:1–43:12 (accusing Morgan and "Nate" of raping her while "Paul," Murphy and Dave Brown watched); *id.* at 46:8-12 (accusing Clint Morgan of raping her three times); *id.* at 59:19–25 (claiming that Morgan "wanted sexual favors" and "became a regular" and that he "made arrangements with a black male employee of Michelin and then they took me off to a hotel somewhere"); *id.* at 65:8–12 (alleging that Dave Brown sexually assaulted her while outside on a smoke break in front of other employees).] Plaintiff reported the incidents to Newbold and "then they covered it up." [*Id.* at 50:22–23.] She testified that she reported the assaults to Michelle Mauger. [*Id.* at 51:4.] Newbold conducted an investigation into Plaintiff's allegations and found them to be meritless. [*Id.* at 143:10–12; 144:25–145:1–10.]

Plaintiff also accused multiple Michelin and Newbold employees of trying to kill her. Morgan tried to kill her by throwing her out of his car, and "four black guys over at the Starr plant" force fed her paint thinner. [*Id.* at 73:8–13.] She asserts four different men pulled her into the laundry room one morning and dumped cocaine down her throat. [*Id.* at 79:22–80:1.] Plaintiff testified that Michelle Mauger knew of the incident and was "in on it because she's trying to help the DSS lady to get my little girl taken away from me because they're all pissed that I reported Michelin and that Newbold's going to lose their $13.7 million contract." [*Id.* at 81:18–25.] Plaintiff made three police reports regarding the incidents. [*Id.* at 95:5–8.] Plaintiff acknowledges that the police investigations determined that all of her allegations were unfounded, [*id.* at 97:13–17, 107:18–22], but claims that "DSS convinced the police that it didn't happen." [*Id.* at 99:22–24.] She accused the police officers who investigated the

incidents of lying in their reports. [*Id.* at 99:20–22.] Plaintiff also accused several DSS workers of assaulting her. [*Id.* at 119:7–9.]

Plaintiff received one warning at work before she was terminated, for failing to perform safety operations and for screaming at a supervisor. [*Id.* at 84:1–4], [Doc. 215-2 at 13.] After Plaintiff's termination, she applied for and began receiving Social Security disability benefits because of degenerative disks, degenerative joint disease of the spine, chronic T2 fracture and borderline personality disorder with paranoid features and bipolar disorder with psychotic features. [Doc. 215-10.] Plaintiff admits that she currently suffers from mental illness. [Doc. 236 at 112:12–113:10.] Plaintiff believes she was fired because she filed a charge of discrimination with the EEOC. [*Id.* at 160:20–22.]

## APPLICABLE LAW

**Liberal Construction of Pro Se Pleadings**

Plaintiff brought this action pro se, which requires the Court to liberally construe her pleadings. *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. However, a court may not construct the complainant's legal arguments for her. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should the court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Summary Judgment Standard**

Rule 56 states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

4

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION

**David Brown's Motion to Dismiss**

David T. Brown was served on April 23, 2013 by the United States Marshals Service. [Doc. 187-2.] David T. Brown, who was properly served, asserts that he is not the same individual as the named defendant in this case, Dave Brown.[4] Plaintiff agrees and consents to David T. Brown's dismissal. [Doc. 199.] Therefore, the undersigned recommends that David T. Brown be dismissed from this case.[5]

**Defendants' Motion for Summary Judgment**

*ADA, ADEA, and Title VII Claims*

<u>Individual Defendants</u>

---

[4] Though Plaintiff's 120-day period to serve the summons and complaint on Defendant Dave Brown passed in mid-December 2012, the Court granted Plaintiff's renewed motion for an extension of time to serve Dave Brown on April 1, 2013. [Doc. 168.]

[5] Plaintiff's request for a subpoena to find Dave Brown has been denied. [Doc. 232.]

Title VII, the ADEA, and the ADA prohibit discriminatory acts by employers. 42 U.S.C. § 2000e-2(a)(1).[6] The statute defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day" for a given period of time and "any agent of such a person." *Id.* § 2000e(b). Individuals are not liable in their individual capacities for Title VII, ADEA or ADA violations. *Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 180 (4th Cir. 1998); *Baird ex rel Baird*, 192 F.3d at 472; *Birkbeck*, 30 F.3d at 510. Therefore, in their individual capacities, Morgan and Murphy are not liable for Plaintiff's claims of any Title VII, ADEA, or ADA violation and summary judgment is appropriate as to the individuals on those claims.

### *Timeliness of Discrimination Claims*

Defendants argue that Plaintiff's claims should be dismissed as time barred. Federal law sets out the process by which an employee may institute an employment discrimination lawsuit against her employer:

> Before bringing a civil suit for an ADA[, ADEA, or Title VII] violation, the aggrieved party must file a charge with the EEOC. If the EEOC does not take action within 180 days from the date of filing, the aggrieved party is entitled to notice from the EEOC. Upon notification, i.e. a right to sue letter, the aggrieved party has 90 days to file suit.

---

[6] Title VII, the ADEA, and the ADA define "employer" in essentially the same way, and thus, courts use case law developed under one statutory scheme to analyze issues under another statutory scheme. *See Reynolds v. Am. Nat'l Red Cross*, 701 F.3d 143, 155 (4th Cir. 2012); *Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990, 993 (6th Cir. 1997). Moreover, the Fourth Circuit has held individuals are not personally liable for violations of the ADEA or the ADA. *See, e.g.*, *Baird ex rel. Baird v. Rose*, 192 F.3d 462, 472 (4th Cir. 1999) ("Because Title VII does not authorize a remedy against individuals for violation of its provisions, and because Congress has made the remedies available in Title VII applicable to ADA actions, the ADA does not permit an action against individual defendants for retaliation for conduct protected by the ADA."); *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 510 (4th Cir. 1994) ("[W]e read § 630(b) [of the ADEA] as an unremarkable expression of respondeat superior—that discriminatory personnel actions taken by an employer's agent may create liability for the *employer*." (emphasis added)).

7

*Davis v. Va. Commonwealth Univ.*, 180 F.3d 626, 628 n.3 (4th Cir. 1999) (citing 42 U.S.C. § 2000e-5(f)(1); *Dickey v. Greene*, 710 F.2d 1003, 1005 (4th Cir. 1983) (reversed on other grounds)); *Aziz v. Orbital Scis. Corp.*, 165 F.3d 17, 1998 WL 736469, at *1 (4th Cir. 1998) (per curiam) (unpublished table decision) ("Title VII and the ADEA allow an aggrieved party ninety days after receipt of a right-to-sue letter from the EEOC to file a civil action." (citing 42 U.S.C. § 2000e-5(f)(1); 29 U.S.C. § 626(e))). However, the United States Supreme Court has "interpreted Title VII's requirement that suits be filed within 90 days of receiving a notice of right to sue from the Equal Employment Opportunity Commission to be subject to tolling in appropriate circumstances." *Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 439 (1990) (citing *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345 (1983)).

   With respect to equitable tolling, the United States Supreme Court has recognized,

> Federal courts have typically extended equitable relief only sparingly. We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass. We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights.

*Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990) (footnotes omitted) (citation omitted). The United States Court of Appeals for the Fourth Circuit has underscored the very limited circumstances where equitable tolling will be permitted:

> [A]ny invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes. To apply equity generously would loose the rule of law to whims about the adequacy of excuses, divergent responses to claims of hardship, and subjective notions of fair accommodation. We believe, therefore, that any resort to equity must be reserved for those rare instances where—due to circumstances external to the party's own

8

> conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result.

*Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000). In accord with these guidelines, the Fourth Circuit has upheld applications of equitable tolling of the 90-day filing period when the employee or her attorney was diligent in pursuing the employee's avenues of relief. *See, e.g.*, *Crabill v. Charlotte Mecklenburg Bd. of Educ.*, 423 F. App'x 314, 321–22 (4th Cir. 2011) (applying equitable tolling when the plaintiff demonstrated she was diligent in checking her mail and staying in contact with her attorney but somehow failed to receive her right to sue notice); *Coleman v. Talbot Cnty. Det. Ctr.*, 242 F. App'x 72, 74 (4th Cir. 2007) ("Although we do not excuse Coleman's failure to notify the EEOC of her change of address, it is not at all unreasonable for a layperson who has retained counsel to assume that all further matters will be handled by her attorney. We therefore conclude that . . . the primary fault is that of the EEOC for not—as both counsel and Coleman reasonably expected—sending a copy of the right-to-sue letter to counsel. In this vein, we note with approval counsel's diligence in pursuing the matter.").

Here, Plaintiff filed two charges of discrimination against Newbold. The first, Charge No. 846-2011-19481 ("Charge 19481") alleged discrimination on the bases of Plaintiff's race, sex, religion, age, and disability. [Doc. 1-2 at 13.] The second, Charge No. 436-2011-577 ("Charge 577"), alleged retaliation. [Doc. 1-2 at 22.] The EEOC issued right to sue letters on January 23, 2012 for Charge 19481 [Doc. 1-2 at 34] and on June 19, 2012 for Charge 577 [Doc. 1-1]. Plaintiff filed suit in this Court on August 6, 2012. [Doc. 1.] Therefore, the allegations raised in Charge 577 as to retaliation are not time barred. Though Plaintiff does not allege what day she received the right to sue letter, she filed this suit less than 90 days after the EEOC sent the letter.

9

As to Charge 19481, however, the Court finds that these claims are time barred. Plaintiff did not file suit until almost eight months after the EEOC issued its right to sue letter. Plaintiff admits that she received the right to sue letter in January 2012. Cetina Dep., 93:17-19. Therefore, she had actual notice—she received the letter in January. She argues that because she received a second letter from the EEOC, regarding her retaliation claim, that the time for her to file her suit began to run then. Plaintiff misunderstands the requirements of the EEOC charges and time limits.

"A plaintiff's EEOC charge defines the scope of her subsequent right to institute a civil suit." *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000). Thus, each charge is considered separately for both content and timeliness. *See Lewis v. Norfolk S. Corp.*, 271 F.Supp.2d 807, 811-12 (E.D. Va. 2003). Thus, Plaintiff was required to file suit on the contents of her first claim by April 28, 2013.[7] She failed to do so and therefore the claims in that charge are barred. Moreover, though the Court raised the possibility of equitable tolling in its Report and Recommendation on Defendant Michelin's Motion to Dismiss [Doc. 192], Plaintiff has presented no evidence to support a claim of equitable tolling. Plaintiff has not shown that she diligently pursued her legal rights such that she would be entitled to equitable tolling. She does not allege, let alone provide evidence, that she had an agreement with her attorney that he would handle all correspondence related to the case, or that she did not receive the right to sue letter, or any other scenario that may raise the possibility of equitable tolling. Therefore, the Court recommends that Plaintiff's Title VII, ADEA, and ADA discrimination claims against Newbold be dismissed as untimely.

---

[7] Assuming Plaintiff received the letter three days after the EEOC sent it.

***Retaliation Claims***

Courts apply the analysis articulated in *McDonnell Douglas v. Green* to retaliation claims. 411 U.S. 792 (1973). Plaintiff must first articulate a prima facie case of retaliation.[8] *Laber v. Harvey*, 438 F.3d 404, 432 (4th Cir. 2006). If a plaintiff establishes a prima facie case, courts examine whether an employer has proffered a legitimate, non-discriminatory reason for the adverse employment action. *Id.* If so, the burden shifts back to the plaintiff to show that the employer's reason is simply a pretext for discrimination. *Id.*

Newbold does not dispute that Plaintiff engaged in protected activity–filing a charge with the EEOC–and experienced an adverse employment action (termination). Newbold was notified of Plaintiff's initial charge of discrimination by the EEOC on January 26, 2011. [Doc. 215-6.] She was terminated on March 25, 2011. One manner in which a plaintiff may prove causation is through temporal proximity.

> "[A] causal connection for purposes of demonstrating a prima facie case exists where the employer takes adverse employment action against an employee shortly after learning of the protected activity." *Price v. Thompson,* 380 F.3d 209, 213 (4th Cir.2004). Generally speaking, however, the passage of time alone cannot provide proof of causation unless the "temporal proximity between an employer's knowledge of protected activity and an adverse employment action" was "very close." *Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (per curiam).

*Pascual v. Lowe's Home Ctrs., Inc.*, 193 F. App'x 229, 233 (4th Cir. 2006)(unpublished). In *Pascual*, the Fourth Circuit found that three to four months from the employer discovering the protected activities to termination was too great a period of time to establish causation by temporal proximity alone. Here, however, less than two months passed between Newbold's notification of the charge and Plaintiff's termination. Therefore, viewing the facts

---

[8] To establish a prima facie case of retaliation, a plaintiff must demonstrate that: (1) he engaged in protected activity; (2) an adverse employment action was taken against him; and (3) there was a causal link between the protected activity and the adverse action.

11

in the light most favorable to Plaintiff, the Court assumes without deciding that Plaintiff has established a prima facie case of retaliation.

The burden of persuasion then shifts to Newbold to articulate a non-discriminatory reason for Plaintiff's termination.[9] The burden on a defendant in a Title VII case when articulating a non-discriminatory reason is "not a burden of proof, but rather is that of producing an explanation." *Taylor v. Sec'y of the Army*, 583 F.Supp. 1503, 1508 (D. Md. 1984) (citing *Bd. Of Trustees v. Sweeney*, 439 U.S. 24 (1978)). The Court has relied upon Newbold's letter to the EEOC, dated July 27, 2011 (and time stamped received by the EEOC on July 28, 2011), setting out Defendant's non-discriminatory reason for Plaintiff's termination. [Doc. 215-2.] Newbold states that Plaintiff "was not terminated in retaliation for exercising her rights. Near the end of her employment, her false accusations were causing problems with our associates as well as with Michelin's. It was causing concern about our keeping the contract." [*Id.*] The Court finds that Newbold has met its burden of articulating a legitimate reason for Plaintiff's termination. Therefore, Plaintiff must demonstrate that Newbold's proffered reason is actually a pretext for discrimination.

In order to show pretext, Plaintiff must actually show that the articulated reason is "false, and ultimately, that the employer retaliated against [her]." *Laber*, 438 F.3d at 432. Plaintiff has failed to put forth any evidence that Newbold's articulated reason is false. She admits that Michelle Mauger gave her the same explanation for her termination—false accusations—when Plaintiff was fired. Cetina Dep. at 215:23-24. Plaintiff admits that she

---

[9] At this juncture, though Newbold does not bear a burden or proof but must simply articulate a legitimate reason, a sworn affidavit from Defendants would have assisted the Court. The unsworn, unsigned witness statements that the Newbold Defendants attached to their motion for summary judgment (many of which include handwritten notes) have not been submitted under oath, and thus the Court will not rely on them in making its summary judgment determination.

made multiple, serious allegations against numerous Newbold and Michelin employees. She acknowledges that both the police and internal investigations into these incidents concluded that her allegations were false. Therefore, the Court finds that Plaintiff has failed to establish that Newbold's non-discriminatory reason is false or a pretext for discrimination. Summary judgment in favor of Newbold is appropriate on this claim.

### *State Law Claims*

To the extent Plaintiff attempted to allege sexual harassment or any other state law claim against the Defendants, such state law claims could be heard by this Court only through the exercise of supplemental jurisdiction, which allows federal courts to hear and decide state law claims along with federal law claims.[10] Federal courts are permitted to decline supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3), however, if "the district court has dismissed all claims over which it has original jurisdiction."  In this instance, the Court recommends that the district judge decline to exercise supplemental jurisdiction in this case.

### **RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that David T. Brown's motion to dismiss [Doc. 187] and Defendants' motion for summary judgment [Doc. 215] be granted.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

September 20, 2013
Greenville, South Carolina

---

[10] A civil action for Plaintiff's state law claims could be cognizable in this Court under the diversity statute if all the statute's requirements are met.  *See* 28 U.S.C. § 1332.  Here, however, there is not complete diversity between the parties as required under the statute.